UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITO NICKOLAS GONZALEZ, III, | Case No. 1:23-cv-01420-HBK |
| Plaintiff, | ORDER REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY[2] |
| v. | |
| MICHELLE KING, COMMISSIONER OF SOCIAL SECURITY,[1] | (Doc. Nos. 17, 19) |
| Defendant. | |

Benito Nickolas Gonzalez, III ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 17, 19-20). For the reasons set forth more fully below, the Court remands the matter to the Commissioner of Social Security for further administrative proceedings.

////

---

[1] The Court has substituted Michelle King, who has been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

## I.     JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance benefits on August 27, 2019, alleging a disability onset date of August 1, 2013 in both applications. (AR 294-307). At the hearing, Plaintiff amended the disability onset date to October 1, 2017. (AR 42-43). Benefits were denied initially (AR 90-106, 140-47) and upon reconsideration (AR 107-139, 154-65). Plaintiff appeared for a telephonic hearing before an administrative law judge ("ALJ") on May 26, 2022. (AR 38-83). Plaintiff testified at the hearing and was represented by counsel. (*Id.*). On July 7, 2022 denied benefits (AR 7-37), and on July 25, 2023 the Appeals Council denied review. (AR 1-6). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

/////

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 39 years old at the time of the hearing. (*See* AR 44). He completed high school and took classes toward an associate's degree in criminal justice. (AR 46). He lives alone. (AR 44). He has work history as a relief manager, prep fry cook, help desk representative, and military police. (AR 48-58, 76-77). Plaintiff was in the military, but was separated after hurting his right neck, shoulder, and leg. (AR 47). Plaintiff testified he cannot work because of severe depression, lack of focus, neck pain, shoulder pain, hip pain, traumatic brain injury, and posttraumatic stress disorder. (AR 59-60). He reported he can stand in one place for 35-40 minutes before he has to lay down and rest for an hour to recover, he can walk for 45 minutes before he has to sit or lay down, and he is "really limited" in using his right arm. (AR 60-62). Plaintiff testified he can sit in a desk chair for 20 minutes before he has to readjust, it is difficult to bend at the waist since neck surgery, he cannot squat, he can kneel on the left side for a couple of minutes, he cannot crawl, and it is difficult to go up and down stairs. (AR 62-64). He reported depression, posttraumatic stress disorder, difficulty with memory and focus due to the traumatic

brain injury, and difficulty getting along with and being around other people. (AR 64-65, 70-71). He gets injections every three months in his right hip. (AR 69). Plaintiff testified that he has had nightmares every two or three weeks for 15 years. (AR 71-72).

////

### III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

////

### IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's

ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

////

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2017, the amended alleged onset date. (AR 13). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc disease status post

fusion; right shoulder degenerative joint disease; chronic pain syndrome; unspecified mood disorder secondary to remote traumatic brain injury; unspecified anxiety disorder; posttraumatic stress disorder. (AR 13). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 14-20). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and the following: the claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; can stand and walk for 6 hours of an 8 hour work day; can sit for 6 hours of an 8 hour work day; can occasionally stoop, climb ramps and stairs, balance, kneel, and crouch, but can never crawl or climb ladders, ropes, and scaffolds. The claimant can frequently reach to the front and sides but only occasionally reach overhead, and can frequently handle, and finger. The claimant must not be exposed to unprotected heights. The claimant can understand, remember, and carry out simple tasks; can make simple work-related decisions; and can have occasional work-related interactions with co-workers, supervisors, and the general public.

(AR 20). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 29). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: garment sorter, office helper, and garment bagger. (AR 30-31). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of the decision. (AR 31).

////

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's pain testimony; and
2. Whether the ALJ properly considered the medical opinion of treating physician Anisha Patel, M.D.

(Doc. No. 17 at 23-32).

6

## VII. DISCUSSION

**A. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22). Plaintiff argues the ALJ failed to

provide clear and convincing reasons for discounting Plaintiff's pain testimony.³ (Doc. No. 17 at 23-28). The Court agrees.

First, after summarizing the medical record, the ALJ found (1) the "majority of evidence of record indicates that [Plaintiff] maintained grossly intact physical, cognitive, and emotional functioning throughout the relevant period with the benefit of what appears to be largely routine and conservative medication management," and (2) "none of [Plaintiff's] treating physicians have recommended or prescribed more aggressive treatment modalities such as repeat surgical intervention, … for example." (AR 28). Evidence of "conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed). Here, as an initial matter, Defendant has waived any argument that this reason was legally sufficient by failing to respond to Plaintiff's argument. *See, e.g., Jeffrey C. v. Kijakazi*, 2023 WL 4760603, at *3 (D. Or. July 26, 2023) (collecting cases) ("The Government's failure to defend Plaintiff's allegations of error, . . . is a concession of those alleged errors.").

Regardless, as noted by Plaintiff, treatment notes from the relevant period indicate that Plaintiff's "chronic" right shoulder pain was "failing conservative treatment" but opining that surgery would not provide "the functional improvement and symptomatic improvement he desires." (Doc. No. 17 at 27 (citing AR 822) (noting referral to see a shoulder specialist as Plaintiff has "been dealing with these issues for many years without relief")). The Court also notes that as part of the summary of the medical evidence, the ALJ acknowledges Plaintiff underwent surgery to address his neck pain and received ongoing steroid injections for hip and shoulder pain throughout the relevant adjudicatory period. (AR 22-25, 683 ("Given his presentation and his progressive neurological symptoms strongly correlated by the imaging

---

³ Defendant argues the ALJ relied "more on the [prior administrative medical findings] than Plaintiff's statements." (Doc. No. 19 at 15). However, the Court declines to consider this "reason" as it was not offered by the ALJ in the decision as reasons to discount Plaintiff's symptom claims. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

8

1  findings, there are no further nonsurgical treatments which can possibly be recommended here."),
2  689 (treatment visit two-weeks post anterior cervical decompression and fusion surgery for severe
3  stenosis with spinal cord compression), 725 (right shoulder steroid injection), 773 (noting
4  Plaintiff "failed conservative treatment" for his neck pain and "opted to do surgery"), 835 (hip
5  joint injection), 851 (left trochanteric bursa steroid injection)); *See Trevizo v. Berryhill*, 871 F.3d
6  664, 677 (9th Cir. 2017) (referring to even recommendation for surgery as "aggressive
7  intervention"); *Garrison*, 759 F.3d at 1015 n.20 (expressing "doubt that epidural steroid shots to
8  the neck and lower back qualify as 'conservative' medical treatment").

9  Finally, in support of this finding, the ALJ generally cites 447 pages of the 459-page
10 medical record.  (AR 28). "The ALJ must specifically identify the testimony she or he finds not to
11 be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*,
12 246 F.3d 1195 (9th Cir. 2001); *Brown-Hunter*, 806 F.3d at 494 ("To ensure that our review of the
13 ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected
14 arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide
15 clear and convincing reasons, supported by the evidence in the record, to support that credibility
16 determination.").  Here, to the extent the ALJ specifically found evidence of "routine and
17 conservative medication management" discounted Plaintiff's reported pain symptoms, a general
18 citation to almost the entire medical record that includes both routine and aggressive treatment, as
19 identified above, without identification or explanation as to how any treatment method
20 undermined his alleged symptom claims arguably does not rise to the level of substantial
21 evidence to reject Plaintiff's symptom claims.  Based on the foregoing, this was not a specific,
22 clear, and convincing reason to reject Plaintiff's pain-related symptom claims.

23 Next, the ALJ noted that Plaintiff's cervical fusion surgery in September 2020 "appears to
24 have been largely successful without complication."  (AR 28 (citing AR 689 (noting Plaintiff was
25 doing "exceptionally well" two weeks post-surgery)); *see also* AR 691 (noting Plaintiff
26 "continues to do well but he is not quite as certain about how much is preoperative symptoms
27 have resolved at today's visit compared to when he was seen a month ago" seven weeks post-
28 surgery)). As part of the summary of medical evidence, as noted by Defendant, the ALJ also cites

Plaintiff's single report in September 2019 that a weekly pain patch worked "extremely well". (AR 23, 410). The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). However, as noted by Plaintiff, the ALJ failed to address Plaintiff's reports of neck pain after cervical fusion surgery. (Doc. No. 17 at 26 (citing AR 708 (noting experienced right-sided posterior and anterior neck pain and numbness post-surgery), 710 (referral to neurosurgeon to evaluate Plaintiff's neck pain post-surgery), 715 (reporting "despite surgery he continues to have pain and limitation in his mobility")). Moreover, regardless of improvement in Plaintiff's neck pain immediately post-surgery, the ALJ fails to offer any evidence of improvement in Plaintiff's complaints of severe shoulder pain. Thus, any purported improvement in Plaintiff's neck pain post-surgery, standing alone, does not constitute substantial evidence to discount the entirety of his subjective pain complaints. This was not a clear and convincing reason, supported by substantial evidence, to discount his symptom claims.

Finally, the ALJ found "while repeated clinical examinations of the [Plaintiff] have confirmed the presence of multilevel degenerative changes in the cervical region, all of these changes appear to be essentially minimal and stable as well." (AR 28). In support of this finding, the ALJ cited August 2019 MRI showing multilevel changes in the cervical spine, worst and moderate to severe at C5-C6 and C6-C7 levels, "not significantly change since prior study" and "significant abnormality, [attention] needed"; April 2018 MRI of the cervical spine showing "degenerative changes with spinal stenosis and disco osteophytic protrusions" and noting "abnormal, further evaluation required!"; October 2017 MRI of the right shoulder showing degenerative changes and tears of the supraspinatus and infraspinous tendons with no full-thickness rotator cuff seen"; October 2014 MRI showing moderate cervical spine degenerative disease; July 2020 MRI showing cervical spondylosis C5-6 and C6-7 with some stenosis respected with neural foraminal narrowing particularly on the left side; August 2020 MRI showing minimal disc bulges, severe left neural foraminal stenosis, and flattening of the left ventral cord; and February 2022 MRI showing "interval progression in a focal erosion along the

supraspinatus tendon footplate," a torn superior labrum, and noting "significant abnormality, [attention] needed." (AR 459-61, 466-68, 477-78, 515-18, 682, 697, 699-700, 809-10, 826). However, these records consist entirely of imaging and radiology reports, a plain reading of which appears to indicate largely no change and/or worsening objective findings, with several report indicating a "significant abnormality" with "attention needed," in contradiction to the ALJ's finding that the changes were "essentially minimal and stable."

Defendant argues the ALJ supports this finding in the summary of medical evidence by citing examination findings of normal strength, intact neurological functioning, normal range of motion, and normal gait. (Doc. No. 19 at 13-14 (citing 423-24, 537, 561 (also noting significant pain with external rotation on range of motion testing), 682, 685-87). However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added))); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were not supported by substantial evidence. Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's pain-related symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Additional Assignment of Error**

Plaintiff also argues the ALJ failed to properly evaluate the treating opinion of Anisha Patel, M.D. (Doc. No. 17 at 28-32). The Court notes that the ALJ relied in part on similar reasoning to reject both Dr. Patel's opinion and Plaintiff's symptom claims, including citation to nearly the entire medical record as "inconsistent," purported improvement post-cervical decompression and fusion surgery, and lack of aggressive treatment. (*See* AR 27-28). Because

the ALJ's consideration of this issue is interrelated with a reevaluation of Plaintiff's symptom claims, including a review of the medical evidence as it relates to Plaintiff's subjective complaints, the Court declines to address this challenge in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and conduct a new sequential analysis, including a reassessment of the medical opinion evidence, if necessary.

**C. Remedy**

Plaintiff requests that the case be remanded for further proceedings including a *de novo* hearing and a new decision. (Doc. No. 17 at 32). The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate Plaintiff's symptom claims, as well as all relevant medical evidence, including medical opinions. The ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) is GRANTED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 19) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.

5. The Clerk shall enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

Dated:    February 14, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE